**LUFT, Guardianship in re, Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 4423.   Decided June 9, 1950.

Carl J. Purpus, James M. Hengst, Columbus, for appellant.
Robert R. Shaw, Guardian, J. Weller Igo, Columbus, for guardian.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a judgment of the Probate Court of Franklin County denying an application of the ward for the termination of the guardianship.

The errors are assigned under four headings which may be encompassed within two: First, in permitting the guardian to appear and contest the ward's application for termination of the guardianship; second, that the order of the Probate Court is contrary to law, is not sustained by sufficient evidence and is against the manifest weight of the evidence.

The first assignment is not well made. It was discretionary with the trial judge to permit the guardian in the interest of the ward's estate to appear and contest his removal, introduce testimony and cross-examine witnesses.

To properly appreciate the other questions presented, it will be necessary to examine the proceedings. The order from which the appeal is taken was made pursuant to an application of the ward in which she recites that "Robert R. Shaw was appointed guardian of her person and estate on the ground of physical and mental incompetency, that while she

is physically ill and requires medical and nursing service, with all of which she is well provided, she is not mentally incompetent and was and is capable of looking after and taking care of her property; and that letters of appointment of said guardian were improperly issued." The prayer is for termination of the guardianship.

The trial judge in his written opinion passing upon the application very properly noted, that the statement that the guardian had been appointed for the person and estate of the ward on the ground of physical and mental incompetency, was not supported by the facts. The guardian was named for the estate only of the ward and because she was physically incompetent.

The journal entry further recites "that the said Nina Luft signed a written consent consenting to the appointment" and such written consent admittedly was made in open court and is found among the files in the transcript.

Two facts stand out in this record and one is almost as certain as the other, viz., that at the time the guardian was appointed the ward was not mentally incompetent, and she would have been entitled to a court order to that effect; second, that she is badly physically incapacitated because suffering from Parkinson's disease.

Although the application for the termination of the guardianship was grounded upon the claim of irregularity in the appointment only, the trial judge in one of the final entries, not only determines that the letters of appointment of the guardian were not improperly issued but also that the necessity for the continuance of the guardianship still exists. In the presentation of the appeal and the briefs counsel have taken wide latitude and given consideration to both matters determined by the court. We therefore in reviewing the judgment assume that by common consent both grounds for termination of the guardianship provided in §10507-61 GC were tried and adjudicated.

Sec. 10507-61 GC provides in part that upon proper notice

"and satisfactory proof that the necessity for the guardianship no longer exists, or that the letters of appointment were improperly issued, the Probate Court shall order that the guardianship of an incompetent, * * * terminate, and shall make an appropriate entry upon the Journal."

The guardianship likewise could be terminated if it appeared that there was no necessity for the appointment of the guardian when made.

One unusual aspect of this case is that the person who preferred the original charges against Mrs. Luft affords no testimony of his own or of any other person on the application to terminate the guardianship.

Under the statute §10507-2 GC, which provides that the Probate Court shall appoint a guardian of the person, or of the estate, or of both, of an * * * incompetent (except that if the incompetency be due to physical disability or infirmity the consent of the incompetent must first be obtained), * * *; provided the person for whom the guardian is to be appointed be a resident of the county, or has a legal settlement or residence therein, a prerequisite to the appointment of the guardian is that it is necessary. That part of the section in brackets was enacted following the decision of our Supreme Court in **Schafer v. Haller, 108 Oh St 322,** declaring unconstitutional the provision of former §10989 GC, making physical disability or infirmity a ground for the appointment of a guardian. The practical effect of this added language in §10507-2 GC is to place in the hands of the ward, when necessity for the appointment of a guardian appears, the power to select the guardian. This is true because at any time prior to the appointment the applicant can withdraw the consent. So that here it becomes vital to a correct decision of this appeal to decide two determinative factors: first, the necessity originally and the continuance of the necessity on the application for termination of the guardianship; and second, the reality of the consent of Mrs. Luft.

Upon both of these matters if we had the right to determine them originally upon the evidence before us we would hold that all of them should be resolved in favor of Mrs. Luft. But we recognize that we are hearing this appeal on law only and have no such power to weigh and determine the evidence as upon de novo hearing. However, upon the development of the testimony on the application for the termination of the guardianship we are of opinion that the refusal to grant the application was against the manifest weight of the evidence. The development upon which we rely was not before the Probate Judge at the time of the original appointment and no criticism can properly be directed against the action taken at that time. It does not appear, nor can we find that the Probate Judge fully appreciated the influences which must have actuated Mrs. Luft in signing the consent to the appointment of the guardian. She did not come into court on her own motion. She was forced to come in upon two charges: first, that she was a mentally incompetent person; and second, that she was physically incompetent to conduct her own business affairs. It must be assumed that upon

the informal hearing the Court could properly consider, prior to the consent of Mrs. Luft, but one aspect of the application for the appointment of a guardian, viz., mental incompetency. Mrs. Luft had reason to believe, though it may not have been the fact, that the person who filed the affidavits seeking the appointment of the guardian was unfriendly to her and her interests. She also might well have been apprehensive that as a result of these unfriendly acts the Court might appoint a guardian for her upon the ground that she was an insane person. Finally, from her subsequent conduct it is reasonable to conclude that she did not appreciate the full implication of her consent to the appointment.

In the state of mind of Mrs. Luft to which we have heretofore referred, her own counsel advised her that she should consent to the appointment, and further told Miss Thornton, presumably in the presence of Mrs. Luft, "that with the appointment of her personal counsel as guardian * * * then after the operation, I thought after the operation for quite a while, for a period of, say, six months that perhaps, * * * the heat was off and * * * perhaps then she might be appointed as guardian." One inference which could have been drawn from this statement was that Mrs. Luft might after the appointment have something to say respecting the continuance of the guardianship or the same guardian.

Almost continuously from the date of the appointment Mrs. Luft has refused to cooperate with the guardian who ostensibly was named upon her request and as desired by her. Such failure at all times to cooperate is utterly inconsistent with the thought of consent such as is contemplated by §10507-2 GC. It is altogether probable that the Probate Judge did not have full knowledge of these factors which manifestly operated on the mind of Mrs. Luft to produce her consent. Nor do we impute any want of good faith to Mrs. Luft's counsel. He no doubt acted in the exercise of his best judgment in the situation as it appeared to him when he advised Mrs. Luft.

It is manifest that the guardianship of the estate only of Mrs. Luft is not working to her advantage and it is not accomplishing that which is intended by the statute in such appointments.

We are doubtful if the necessity for the appointment would have appeared originally if full development of the facts had been made. Certainly the necessity of the continuance of the guardian upon the record does not appear.

Mrs. Luft owns considerable real estate, the gross income from which is $150.00 per month. At the time of the appointment of the guardian there was no suggestion of improvident

expenditure, that her income or estate was being squandered or that there was any danger of her losing title to her holdings. She was having continuous and proper attention and had the mental ability to name an agent or an attorney in fact, if desired. Upon the application for termination of the guardianship it clearly appears that by reason of the appointment of the guardian her income has been depleted, there is every probability that her estate will be materially decreased, and most unfortunately the guardian is impotent to accomplish anything of substantial value to his ward because of her unwillingness to cooperate. In this situation if necessity for the appointment appeared originally it had disappeared when the application of the ward was before the court.

The guardian now serving is an attorney of ability and integrity and there is no reason to believe that any person, other than Miss Thornton, could do better or more satisfactory service under the appointment than he. But as guardian of the estate he has no control of the person of his ward. Because of her physical condition Mrs. Luft requires constant attention, day and night. To employ and pay for trained attendants or nurses and a housekeeper to meet her necessities would rapidly dissipate her estate. Miss Thornton, the ward's sister, has, almost alone, performed all of these services for a period of years without remuneration. The guardian cannot discharge her. He might reduce the allowance to his ward. This for obvious reasons is impractical. Without some control over the person of the ward the guardian is practically helpless and if he should accomplish the removal of Miss Thornton it would not only increase the cost of the maintenance and care of the ward, but might very seriously impair her physical well being. Miss Thornton's belligerant attitude in this case has been inordinate, unwise and has manifestly operated to her own disadvantage and probably also to the disadvantage of her sister. But Miss Thornton is capable and has stood by her sister with the utmost loyalty and consideration. It is most unfortunate that this ward, with her limited estate, should be subjected to the unusual expense as well as the mental distress which has occurred and will continue as a result of this guardianship.

It is also unfortunate that Mrs. Luft was not required to testify more at length as to the circumstances, conditions and state of mind at the time that she signed the consent. Upon remand the Court can explore this aspect of the case and should do so fully. We appreciate the difficulty under which Mrs. Luft testifies but several of the witnesses stated that they had no difficulty in understanding her and the Court should,

if necessary, call somebody to his assistance to get all the facts which have any bearing on the consent of Mrs. Luft to the appointment of the guardian.

In our opinion the failure of the Court to sustain the motion of Mrs. Luft to terminate the guardianship was contrary to and against the manifest weight of the evidence.

The judgment will be reversed and cause remanded for further proceedings according to law.

MILLER, PJ, and WISEMAN, J, concur in judgment.

By MILLER, PJ.

I concur in the judgment of reversal, but am of the opinion that this Court should render a final judgment terminating the guardianship. I am in full accord with my associates in finding that the Court properly appointed the guardian in the first instance, but when it appeared that Mrs. Luft's consent was not genuine and was given under an apparent misapprehension of her legal rights, the guardianship should have been terminated. It should be noted that Mrs. Luft did not voluntarily seek the assistance of the Court, but was brought in under a complaint properly filed therein, charging both mental and physical disability. She certainly recognized these as most serious charges, and when she was advised that the Court probably would appoint a guardian for mental disability, although there was no evidence to support such a charge, she merely chose the lesser of two evils and gave her consent. Under these circumstances the consent was not of her own free will and accord and therefore does not meet the requirements of §10507-2 GC. The appointment of a guardian for physical disability without the ward's consent is an unwarranted abridgment of his right to acquire, possess and protect property and therefore in violation of **Section 1, Article I of the Constitution of Ohio. Schafer v. Haller, 108 Oh St 322.**

I am of the further opinion that the record clearly shows not only that there is no necessity for a guardian, but that it would be to the best interest of the ward that the guardianship be terminated. Her income from the estate is so limited that it cannot satisfy all her needs, compelling her to accept the services of others without compensation. She therefore needs the entire income, even more, and the added expenditures incident to the guardianship should not be imposed upon her. Since she has full mental capacity it must be inferred that she is able to employ others physically qualified to look after her affairs.

By WISEMAN, J.

I concur in the judgment of reversal on the weight of the evidence on the theory that Mrs. Luft was persuaded to give her written consent to the appointment of a guardian of her estate on the ground of incompetency due to physical disability by statements of her counsel involving a promise which would require the judgment and action of the Probate Court and which, according to the record, was not brought to the attention of the Court at the time of the appointment, and which is not likely to become a reality. It cannot be said that she acted with a full knowledge of the legal implications of her act; it was not her free act as contemplated by §10507-2 GC.